

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE GIURDANELLA and )
OLIVIA ZUNIGA )
      Plaintiffs, )
       )
v. ) No. 04 C 0710
       ) Paul E. Plunkett, Senior Judge
REGIS CORPORATION d/b/a/ )
REGIS MASTERCUTS FAMILY HAIR, )
       )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Jacqueline Giurdanella and Olivia Zuniga ("Plaintiffs") have sued the Regis Corporation d/b/a Regis Mastercuts Family Hair ("Regis") or ("Defendant") pursuant to 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), claiming that Regis harassed Giurdanella and demoted Zuniga because they are Mexican Americans. Defendant has filed a Rule 56 motion for summary judgment. Based on the following, we grant Defendant's motion.

## Facts

The following facts are undisputed unless otherwise noted. Plaintiffs are both hair care professionals who have been working in the industry since 1989. (Pl.'s Comp. ¶¶10, 12.) Defendant owns and operates thousands of hair care salons around the country, including the two Chicago

salons where Plaintiffs worked as salon managers. (*Id.* ¶¶ 4–5, 10, 12, 14.) In July 2002, Regis purchased all Bo Rics Hair Salons, including the two where Plaintiffs worked. (Def.'s LR 56.1 Stmt. ¶ 3.) Plaintiffs were salon managers at Bo Rics and retained their positions after Regis's acquisition of their stores. (*Id.* ¶ 4.) During their employment with Regis, Plaintiffs were overseen and evaluated by Pamela Tschida, an area supervisor. (Pl.'s Comp. ¶¶ 11, 13–14.)

### **Plaintiff Zuniga's Claim**

Zuniga, a Mexican American woman, became a salon manager for Bo Rics in 1993. She won awards for retail sales during her employment with Bo Rics and Regis. The awards she received included salon supplies, hotel stays, and a computer. (Pls.' L.R. 56.1 Stmt. ¶ 8; Zuniga Dep. at 215.)

Despite this evidence of strong retail sales, Tschida criticized Zuniga often. On December 2, 2002, Tschida issued Zuniga a written warning concerning Zuniga's management performance. (Zuniga Dep., Ex. 5.) In the warning, Tschida wrote that Zuniga had to increase her productivity, decrease her wage percentage, be one of the top two performers in the salon, and improve her communications within the salon and with supervisors. (*Id.*) The warning contained a notice that if Zuniga's performance had not improved by December 30, 2002, she would subject to demotion. (*Id.*) Zuniga claims that before Tschida issued the warning, she told her that there was no way that Zuniga, who earned thirteen dollars an hour, was going to make more money than her. (Pls.' L.R. 56.1 Stmt. ¶ 1; Pls.' Resp. Def.'s L.R. 56.1 Stmt. ¶ 36.) In January 2003, Zuniga's wage was reduced to eleven dollars an hour. (Def.'s L.R. 56.1 Stmt. ¶ 36.)

Zuniga was next warned about her performance on January 3, 2003. In this warning, Tschida stated that Zuniga had failed to properly complete her daily quota sheets. (Def.'s L.R. Stmt. 56.1

¶ 33.) Zuniga denies that she failed to complete the forms and says she was always prepared to discuss quota information over the phone. (Pls.' Resp. Def.'s L.R. Stmt 56.1 ¶ 33.) Nevertheless, she received a warning that indicated that she could be terminated if she continued to violate company policies regarding the quota sheets. (Def.'s L.R. Stmt. 56.1 ¶ 33.)

Over the next eight months, Tschida had several discussions with Zuniga regarding Zuniga's personal productivity. Zuniga concedes she was not always one of the top two producers in the store, as Regis requires of all its salon managers. (Zuniga Dep. at 67.) From July of 2002 until July 2003, Zuniga claims that she met the requisite productivity level a couple of times. (Zuniga Dep. at 99.) On July 2, 2003, Tschida issued Zuniga a final written warning. In that warning, Zuniga was accused of violating Regis's policies by repeatedly failing to deliver bank deposits in a timely fashion. (Zuniga Dep. Ex. 10.) Zuniga does admit that she did not bring the deposits to the bank in a timely fashion on a few occasions. (*Id.* at 117.) She explained the other "late" deposits were actually faults within the bank's recording procedure – according to Zuniga, she made her deposits each night, but the bank did not record them until the next day. Zuniga asserts that this explanation for the others was never addressed. (*Id.* at 88–90.) Tschida presented the final written warning to Zuniga and gave her one month to resolve the issue by properly following banking procedures. Zuniga verbally protested that she had not violated Regis's policy. (*Id.*)

On August 29, 2003, Tschida met with Zuniga to once again discuss the late bank deposits, how the deposits were recorded, and Zuniga's high wage percentage. During that meeting, Zuniga felt as though she had no choice but to step down from manager to stylist, and receive a wage reduction to ten dollars an hour. (Zuniga Dep. at 99, Ex. 4). The new manager assigned to Zuniga's salon was a woman who was not Mexican American. (Pls.' L.R. 56.1 Stmt. ¶ 6.)

### Plaintiff Giurdanella's Claim

Giurdanella claims that Tschida relentlessly disciplined her because she was a Mexican American. On October 22, 2002, Tschida issued a written warning claiming Giurdanella had broken the chain of command by taking a stylist's grievance to another area supervisor, bypassing Tschida. Though Giurdanella denies the incident ever occurred, she was notified that she would be terminated if she broke the chain of command again. (Def.'s L.R. 56.1 Stmt. ¶ 56; Pls.' Resp. Def.'s L.R. 56.1 Stmt.¶ 56.) Tschida issued another written warning on November 7, 2002, concerning Giurdanella's poor productivity. (Def.'s L.R. 56.1 Stmt. ¶ 60.) Giurdanella was again written up on November 22, 2002, because she violated company policy by taking bank slips home, a step she took as a precaution after her salon was broken into. (Id. ¶¶ 61–62; Pls.' Resp. Def.'s L.R. 56.1 Stmts. ¶ 61–62.) On January 24, 2003, she received two written warnings. One was for allegedly taking two days off without informing Tschida, though Giurdanella says she had Tschida's permission to take time off due to illness. The other was for poor productivity. Both warnings carried with them the threat of termination if another infraction occurred. (Def.'s L.R. 56.1 Stmts. ¶ 65–66.) Giurdanella received her a final warning notice on April 22, 2003, after failing to complete, or even begin, a required inventory assessment by the company's deadline. (Id. ¶ 79.) She received a second final notice warning on October 3, 2003, for failing to make bank deposits on time. (Id. ¶ 87.) She says Regis had recently changed banks and she was never given a key to the new night drop box. (Pls.' Resp. Def.'s L.R. 56.1 Stmt. ¶ 87.)

According to Giurdanella, Tschida made several derogatory remarks to her based on her race. Specifically, Giurdanella claims Tschida told her the following: (1) "You Mexicans shouldn't be tired. You shouldn't be tired, Jackie, you should be used to doing things like this"; (2) Mexicans

clean better, which is why Tschida's Mexican shops were running the cleanest, because Mexicans like to clean, that's what they're good at; (3) "[T]hese shelves are dirty. These Mexicans clean better than this"; and (4) "You know what the problem is with you, Jackie, you just think you're an educated Mexican." (Giurdanella Dep. at 96, 107–108.) Giurdanella estimates that Tschida made these and other similar statements five or six times over the course of two years. (*Id.* at 111; Pl.'s L.R. 56.1 Stmt. ¶ 12.)

Giurdanella claims Tschida's derogatory comments were closely followed by the negative written warnings. Unable to handle the constant criticism and reprimands from Tschida, Giurdanella voluntarily stepped down as salon manager and became a stylist. (Pls.' Resp. Def.'s L.R. 56.1 Stmt. ¶ 88.) Tschida encouraged her to finish out the month as a manager in order to receive a bonus, but Giurdanella chose to step down immediately. (Def.'s L.R. 56.1 Stmt. ¶ 89.)

## **The Legal Standard**

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion

Plaintiffs allege that Defendant discriminated against them in violation of Title VII and 42 U.S.C. §1981. Section 1981 prohibits racial discrimination and provides appropriate remedies for intentional discrimination and unlawful harassment in the workplace. 42 U.S.C. §1981. Title VII makes it unlawful for an employer to discriminate against any individual because of such individuals's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1). "While section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). Therefore, we analyze the two simultaneously.

To defeat Defendant's motion, Plaintiffs must either present some direct evidence of Defendant's discriminatory intent or comply with the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973.) *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996).

## Zuniga's Claim

Having no direct evidence of discrimination, Zuniga must satisfy the *McDonnell Douglas* burden-shifting method of proof if she is to defeat Defendant's motion on this claim. Under this burden-shifting method, a plaintiff must first establish a prima facie case of discrimination. *Chiaramonte v. Fashion Bed Group*, 129 F. 3d 391, 396 (7th Cir. 1997) (citations omitted). After the plaintiff has successfully demonstrated these elements, a rebuttable presumption of discrimination is established. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885–86 (7th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 801). The burden of production then shifts to the defendant

to articulate a legitimate, nondiscriminatory reason for taking its challenged employment action. *Id.* If the defendant satisfies its burden, the plaintiff must then demonstrate that the defendant's legitimate reason was actually a guise for discrimination. *Id.* (referencing *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000)). If the plaintiff is able to show that the defendant's explanation was pretextual, then she will have a viable claim for discrimination.

To establish a prima facie case, a plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was replaced by someone who was not of her race. *Steinhauer v. Degolier*, 359 F.3d 481, 484 (7th Cir. 2004).

Zuniga claims that she was discriminated against because of her national origin and as a result was demoted from her managerial position to a general hairstylist position. We accept that Zuniga is a member of a protected class, she was constructively demoted from manager to line employee, and that her replacement was not of her national origin. Therefore, we only turn to the second element needed to establish a prima facie case. Defendant claims that because Zuniga failed to establish that she met the employer's legitimate employment expectations, her claim should fail.

Defendant asserts that because Zuniga received several warnings detailing her low productivity, failure to properly complete quota sheets, and failure to make timely bank deposits, all requirements for managers at Regis, she was not meeting Regis's legitimate employment expectations. Plaintiff admits that she received this progressive discipline, but contends that because she received some awards, she believes she was performing satisfactorily.[1] However, such self

---

[1] However, as Defendant notes, these awards were not performance-based. Rather, they were based on retail sales and therefore do not factor into performance evaluations as does compliance with company procedure and policy.

-7-

serving statements about one's ability are inadequate to show an employee was performing satisfactorily with regard to a discrimination claim. *Jackson v. E.G. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999). Furthermore, there is no material issue of fact when a plaintiff contradicts her employer's negative assessment of her and declares that in her view, she is a model employee. *Id.*

Also, as evidenced by her persistent warnings of any infraction she could find, Tschida provides non-meaningful feedback to Zuniga, in that she continuously finds fault in Zuniga's performance, despite Zuniga's apparent success over the fifteen years she worked in the industry. Furthermore, Tschida highlighted Plaintiff's deficiencies, but in no way offered guidance or counsel to Zuniga on how to improve her performance. However, this evidence of poor management does not discount that Zuniga outrightly conceded that she was not one of the top two producers in the salon and admitted that she knew that standing was a requirement of all Regis salon Managers. (Zuniga Dep. at 83.) Therefore, taken together, these self-serving statements and Zuniga's outright acknowledgment that she was not performing as she was required is fatal to her prima facie case.

Zuniga's claim fails for not establishing each prima facie element of a discrimination claim. Even so, we will complete the burden-shifting analysis to further explain why summary judgment will be appropriate. Although Zuniga does not satisfy this first hurdle in the indirect, burden-shifting method, Defendant has offered a legitimate, non-pretextural reason for Zuniga's demotion. Namely, Defendant asserts that Zuniga received several disciplinary warnings that discuss Zuniga's chronic violation of Regis's company policies and failure to meet managerial requirements. With this legitimate reason for her demotion, the burden then shifts back to Zuniga to establish that this legitimate reason offered by Defendant was merely pret-textural or a guise to hide Defendant's true discriminatory motive. Plaintiff has not carried her final burden of proving that these proffered

reasons for Zuniga's demotion were false and merely a guise for Regis's true motive of discrimination. Moreover, Plaintiff introduces another reason that is void of discriminatory motive for her demotion. Plaintiff repeatedly contends that her supervisor was disgruntled because Zuniga was making more than her despite that Tschida was Zuniga's supervisor. (Zuniga Dep. at 79.) From these facts we can infer that Tschida may have been compelled to demote Zuniga because of jealousy and dissatisfaction with her own compensation. Though lacking in good employment practices, this reason to explain Zuniga's demotion is devoid of racial motives and implications, and offers a plausible non-discriminatory reason for her demotion. Zuniga has offered no proof that any of Defendant's actions were motivated by discriminatory animus. To avoid summary judgment, Zuniga must present facts from which a reasonable jury could find that Defendant terminated her because of her race. Taken together, the results of the burden-shifting analysis and the proffered evidence confirm that there is no genuine issue of material fact to be determined and accordingly, Defendant is entitled to summary judgment from Zuniga's Section 1981 and Title VII claims.

### Guirdanella's Claim

Giurdanella makes no attempt to establish a prima facie case of discrimination. Instead, she claims to have direct evidence that she was treated unfairly because of her race. However, her claim must fail on this basis because she has not alleged an adverse action. *See Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir.1989). Giurdanella was not demoted; she voluntarily chose to step down as salon manager. She claims she was adversely affected when Tschida allegedly made the comment, "the shelves on the display cases should not be dirty because Mexicans clean better," and proceeded to issue a written warning concerning the dirty shelves. However, there is

absolutely no evidence in the record of any written warning regarding dirty shelves. Even if there were, a reprimand in and of itself is not an adverse employment action. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."). An attempt to survive summary judgment based on the indirect method of proof would also fail for lack of an adverse action.[2]

Giurdanella could have made a stronger case based on an allegation of a hostile work environment. Indeed, her testimony and statement of facts suggest she was forced to demote herself to a stylist position because Tschida's constant reprimands and alleged racist remarks had become too much for her to take. She accepted a lower position in order to avoid the pressure of dealing with Tschida on a regular basis.

However, the standard for making a claim of hostile work environment is quite high. Courts generally look to the frequency of the improper conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it is severe or pervasive enough to alter the terms and conditions of the employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Teasing, offhand remarks and isolated, non-egregious incidents are not considered sufficiently severe to satisfy Title VII's definition of a hostile environment. *Id.* at 788.

---

[2]Such an attempt would also fail because she has produced no evidence that any similarly situated salon managers were treated differently by Tschida or Regis. Simply stating that Tschida "treated similarly situated persons, not of Mexican descent, differently," without providing any information about who those persons were or how they were treated, is not sufficient to state a prima facie case.

Essentially, the plaintiff must paint a picture of a "hellish" workplace. *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir.2001).

Giurdanella claims that Tschida made the following comments: (1) "You Mexicans shouldn't be tired. You shouldn't be tired, Jackie, you should be used to doing things like this"; (2) Mexicans clean better, which is why Tschida's Mexican shops were running the cleanest, because Mexicans like to clean, that's what they're good at; (3) "[T]hese shelves are dirty. These Mexicans clean better than this"; and (4) "You know what the problem is with you, Jackie, you just think you're an educated Mexican." Giurdanella estimates that Tschida made these and other comments five or six times over a period of two years.

She also claims that Tschida singled her out for criticism. Tschida wrote her up at least a half a dozen times. Each time, Giurdanella either denies any wrongdoing or has a fairly responsible explanation of why she committed an infraction. For example, Tschida reprimanded Giurdanella for taking bank statements home. Giurdanella only did so, however, because the salon had been broken into and she wanted to keep the bank statements safe. Assuming Giurdanella's account of events to be accurate, she does seem to have been treated unfairly. However, no rational jury could find that Tschida's behavior created an environment so hostile to Mexican Americans that Giurdanella was unable to function in her position as salon manager. Because Giurdanella has failed to present evidence that Regis allowed a "hellish" working environment to flourish, she cannot survive summary judgment on a claim based on hostile work environment.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on Plaintiffs' claims. Defendant's motion for summary judgment is, therefore, granted. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: ____FEB 3 2005____